UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TYRONE FRAZIER, LAURENCE
HARWOOD, DANIEL THARP and
INTERNATIONAL UNION OF
UNITED AUTOMOBILE, AEROSPACE
AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA,

       Plaintiffs,

                                        Case No. 96-73419

v.

                                   HON. DENISE PAGE HOOD

STATE OF MICHIGAN, DEPARTMENT
OF LICENSING & REGULATORY AFFAIRS,
UNEMPLOYMENT INSURANCE AGENCY and
SHARON MOFFETT-MASSEY,

       Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DENY AND/OR LIMIT PLAINTIFF'S FEBRUARY 26, 2021
NOTICES OF DEPOSITION (#84); DENYING PLAINTIFFS' MOTION
FOR ORDER TO SHOW CAUSE AND TO COMPEL DISCOVERY (#89);
GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION (#79);
and STAYING MOTION TO ENFORCE SETTLEMENT AGREEMENT
AND FOR PERMANENT INJUNCTION (#9)**

## I.    BACKGROUND/FACTS

This matter is before the Court on the following Motions:  1) Defendants'

Motion to Deny and/or Limit Plaintiffs' February 26, 2021 Notices of Deposition

(ECF No. 84, filed 3/12/21); 2) Plaintiff UAW's Motion for Order to Show Cause and

to Compel Discovery (ECF No. 89, filed 4/9/21); and, 3) Plaintiff UAW's Motion for Reconsideration as to the deposition of Steve Gray (ECF No. 79, filed 6/14/20). Responses to the motions and replies have been filed and a hearing held.

On July 30, 1996, Plaintiffs United Automobile, Aerospace and Agricultural Workers of America ("UAW") and three individual plaintiffs filed a Complaint for Injunctive and Declaratory Relief against what was then called the Michigan Employment Security Commission, the State of Michigan's body tasked with administering the State's Unemployment Insurance Program (the "Agency"). Plaintiffs alleged three claims under the Social Security Act, 42 U.S.C. § 303 and one claim under 42 U.S.C. § 1983 for violating the Due Process Clause of the Fourteenth Amendment.  Plaintiffs alleged that the Agency failed to properly handle situations where claimants for unemployment were paid money, and a subsequent determination was made that the claimants were not entitled to the unemployment benefits. Plaintiffs asserted that even though appeals were pending and no final determination had been made on the claimants' eligibility to benefits, the Agency sent multiple collection and delinquency notices were sent to the claimants.  The parties thereafter reached a Settlement Agreement and a Stipulated Judgment of Dismissal was entered by the Court on April 29, 1997.  (ECF No. 6).

Sixteen years later, on August 20, 2013, Plaintiffs filed a Motion to Enforce

2

Settlement Agreement and for a Permanent Injunction claiming that the Agency breached the Settlement Agreement. The primary issue in the underlying case involved the Agency's procedures regarding the collection of overpaid unemployment insurance. Plaintiffs argue that under the Settlement Agreement, once an overpayment has been determined, no collection activity would be taken by the Agency until appeals were concluded. Plaintiffs assert the Agency violated the Settlement Agreement since it has undertaken collection activities against claimants even though the appeal process had not been completed. Plaintiffs claim that this Court should issue a permanent injunction for the Agency to adhere to the terms of the Settlement Agreement. Defendants respond that the motion should be denied because the Settlement Agreement was executed more than 16 years ago and the permanent injunction request is without merit as to today's Unemployment Insurance Agency. Defendants assert that no federal law has been breached as to the current claimants. Defendants argue the Court should abstain from exercising any jurisdiction over the claims by Plaintiffs.

This Court initially denied Plaintiffs' Motion to Enforce the Settlement Agreement and Permanent Injunction finding that the UAW lacked standing to enforce the settlement agreement. (ECF No. 36, 3/31/14 Order) On appeal, the Sixth Circuit Court of Appeals reversed and remanded the matter, finding that the UAW had

standing to enforce the settlement agreement.  (ECF No. 40, *Frazier v. Malek*, Case No. 1536 (6th Cir. Jan. 21, 2015))

On remand, the Court entered orders addressing various discovery motions filed by the parties on February 6, 2019 and June 1, 2020.  (ECF Nos. 61, 2/6/19 and 78, 6/1/20)  The parties are currently in the midst of conducting discovery.  Each of the current motion is addressed below.

II.    **ANALYSIS**

   A.    **Defendants' Motion to Deny and/or Limit Plaintiffs' February 26, 2021 Notices of Deposition (ECF No. 84, filed 3/12/21)**

On February 26, 2021, the UAW served Notices of Deposition on Acting Director Liza Estlund Olson and former Director Sharon Moffett-Massey.  Defendants argue that Director Olson has no unique knowledge of the facts of the underlying case and that any information from former Director Moffett-Massey can be obtained from witnesses already subpoenaed.  Defendants further argue that many of the information sought by the UAW has been determined by the Court as irrelevant pursuant to its February 6, 2019 and June 1, 2020 Opinions and Orders and that the repeated requests by the UAW for the information is burdensome and harassing.

   1.    **Acting Agency Director Liza Estlund Olson and former Director Sharon Moffett-Massey**

Director Olson was appointed as the Agency's Acting Director in November

2020.  Prior to the appointment, Olson worked for the Michigan Office of State Employer since 2008.  Olson served as the Agency's Acting Director from 2007 to 2008.  Defendants argue that because Olson only took her position in November 2020, she does not have first-hand knowledge of the Plaintiffs' claims regarding the breach of the Settlement Agreement dating back to 2010.  Olson was at a different agency prior to her appointment.  The information and data ordered by the Court to be produced has already been produced to Plaintiffs and any information Olson may have could be obtained from more appropriate Agency witnesses according to Defendants.

In addition, Defendants argue that the Agency is navigating through unprecedented times.  The Agency is responding to increasing number of state unemployment claims because of the nationwide COVID-19 epidemic, in addition to implementing the CARES Act which was signed into law on March 27, 2020.  The CARES Act gave states the option of extending unemployment benefits ("Pandemic Unemployment Assistance" or "PUA") to individuals who ordinarily were ineligible to receive unemployment benefits under the State's existing law.  Defendants claim that processing state unemployment claims, as well as implementing and processing PUA claims under the CARES Act, has put a tremendous stress on the Agency and its staff, including Olson.

Former Director Moffett-Massey was the Agency's director for approximately

5

three years and was one of a series of Directors from 2010 to the present.  Defendant claim that Moffett-Massey could provide little, if any, information regarding the limited issues relevant to the pending motion to enforce the settlement agreement. Defendants argue that the Agency has already provided the data regarding improper collection activity and the data speaks for itself.  There are other Agency personnel who would be better sources of information and who would be able to explain the data produced.  The data produced was prepared and submitted when Moffett-Massey was no longer the Director.

Plaintiffs respond that the Agency's Directors, Olson and Moffett-Massey carried an obligation to conduct the Agency in accordance with its legal obligations–including ensuring that the Agency fulfilled its obligations under the Settlement Agreement at issue.  Plaintiffs argue that they are not seeking to depose Olson and Moffett-Massey as to information regarding individual claimants but for information regarding their knowledge and enforcement of the Settlement Agreement in this matter while acting as the Agency's Director.  Plaintiffs seek to examine the actions of their office in complying with or violating the terms of the settlement, including policies and procedures adopted, and the Director's interpretation of what the Agreement requires.

This Court has addressed motions for protective order regarding high-ranking

6

government officials in *Greco v. Livingston Cty.*, No. 12-CV-12212, 2014 WL 349103, at *8 (E.D. Mich. Jan. 31, 2014)(Hood) noting,

> Courts have interpreted Rule 26(c) to impose limits on when a high-ranking government official may be subject to deposition. *See Boudreau v. Bouchard*, 07–10529, 2008 WL 4386836, at *2 (E.D. Mich. Sept. 25, 2008), opinion amended on reconsideration, 07–10529, 2009 WL 55912 (E.D. Mich. Jan. 8, 2009) ("This rule is based on the notion that 'high ranking government officials have greater duties and time constraints than other witnesses' and that, without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation.") (citation omitted). Because a high ranking official has both substantial demands on his time and a duty to serve the public, such an official should be subject to deposition only after: (1) a litigant seeking his deposition has exhausted other sources that might yield the information sought, and (2) a showing by the litigant that the official has "first-hand knowledge related to the claim being litigated." *See id.* Without such a rule, high-ranking officials would be constantly subject to the demands of pending litigation, inhibiting their ability to execute their official duties.

*Id.*

The parties agree that as the Director of the Agency, that person is the highest-ranking official of the Agency.  The issue before this Court is whether the Agency breached the Settlement Agreement and, reviewing the language of the Settlement Agreement, the Agency's duties are set forth in Paragraph 7 which provides,

> Whenever the first decision that unemployment benefits have been improperly paid is made by a Referee, the Board of Review or a court, *the Defendant agrees to the following policies and practices*:

(a) The Defendant agrees to issue a determination of restitution which (1) establishes amount of overpayment, (2) state the week(s) of benefits involved in the overpayment in question and, (3) addresses all issues of administrative waiver of the overpayment. The restitution determination shall include a notice that failure to appeal the restitution determination will render it final and may require repayment of the overpayment if the claimant loses the appeal on the merits.

(b) If a timely appeal of the restitution determination is made, the Defendant shall hold the adjudication of the restitution determination in abeyance until the appeal on the underlying issue(s) on the merits becomes final. Upon finality of the appeal on the merits, if the claimant does not prevail, the Defendant shall issue a redetermination of restitution. Upon finality of the restitution (re)determination, the Defendant may begin collection activity. If a timely appeal of the restitution determination is not made, the claimant wins on appeal of the merits, the Defendant will not collect on the restitution determination, even though it has become final.

(c) All notices to claimants concerning collection of the overpayment shall notify the claimant that if they disagree with the amount of the restitution, they may contact the Agency to discuss the matter which may include a seated interview.

(d) After discussion, if the Agency agrees with the claimant that an error has been made, appropriate adjustments will be made in the amount to be collected, even if the restitution determination had become final. If the Agency does not agree with the claimant, the Agency will collect the amount stated in the final restitution determination. Collection under these circumstances presumes a final adverse decision to the claimant as to the merits of the case as well as finality with respect to the restitution determination.

(e) The claimant has a right to request an indigency waiver

at any time during the collection process and the Agency will advise the claimant of this right in every notice regarding collection or recovery of non-fraud overpayment.

(Settlement Agreement, Doc. No. 9, Ex. A, ¶7)

Plaintiffs' reason for seeking the depositions of Olson and Moffett-Massey is to examine the actions of their office in complying with or violating the terms of the settlement, including policies and procedures adopted, and the Director's interpretation of what the Agreement requires. This reason appears overbroad in that it does not seek information as to "how" the Agency breached the Settlement Agreement, but rather "policies and procedures" adopted and the Director's "interpretation" of what the Agreement requires. The parties are bound by the four-corners of the Settlement Agreement. The "policies and procedures" are not at issue, nor the Director's "interpretation" of what the Agreement requires. The limited discovery in this matter relates to "how" the Agency breached the specific provisions of the Settlement Agreement.

In the concluding paragraph, the UAW indicates that Plaintiffs "seek information related to premature collection and to the policies and practices surrounding hardship waivers." This statement is also overbroad in that Plaintiffs do not specifically identify under which specific provision Olson and Moffett-Massey may have information relevant to whether the Agency breached the Settlement

9

Agreement. The Settlement Agreement specifically sets forth the Agency's duties once a "first decision that unemployment benefits have been improperly paid is made by a Referee, the Board of Review or a court." This matter is not before the Court on the Agency's overall policies and procedures and how these may have changed through the years. It may be that there are policies and procedures relating to the implementation of the Settlement Agreement, but until such a breach is shown, any policy or procedure is not relevant–only whether the Settlement Agreement is breached. The issue before the Court is not what the current policies and procedures are and whether those policies and procedures are appropriate or not. It may be that Plaintiffs seek what they believe should be different policies and procedures, but that is not relevant to the issue before the Court, which is whether the Agency actually breached its duties under the express language of the Settlement Agreement entered into by the parties. Unless Plaintiffs specifically identify which provisions of the Settlement Agreement they seek information on from Olson and Moffett-Massey, whether Plaintiffs can show they exhausted other sources for this information and whether Plaintiffs can show how Olson and Moffett-Massey may have first-hand information as to the specific information sought, they need not be deposed.

### 2.    Rule 30(b)(6) Notice of Deposition Duces Tecum

Defendants seek limitations of the Rule 30(b)(6) Notice of Deposition Duces

Tecum because the topics are written very broadly and fail to take into account the very specific provisions of the Settlement Agreement–the improper collection where the first decision to institute restitution was made at the referee level or a later court decision.  Defendants also claim that the topics ignore the Court's warning that "whether the determination of the amount sought to be collected was proper is not before the Court" as noted in the Court's June 1, 2020 Opinion and Order. Defendants noted that the following information sought by Plaintiffs are not relevant to whether the Settlement Agreement was breached:

- General policies and procedures regarding the Agency's practices and procedures; the names of staff who work in the collections or hardship waiver units   (topics 4, 7, 8, 10, 12, 13, 14);
- Information regarding the disposition of hardship waivers (topics 5, 6, 11);
- Amounts of all restitution collection by the Agency and collection methods (topic 15);
- Fraud reversal information (topic 16).

(ECF No. 84, PageID.1357-1358)

Plaintiffs respond that Defendants have not complied (and are not complying) with the Settlement Agreement by engaging in non-conforming collection practices, including by initiating tax intercepts and wage garnishment (or other forms of collection) (1) against people that were eligible for hardship waivers but were denied for baseless reasons; (2) against claimants before any judgment became final; and/or

11

(3) without providing a final notice of restitution due and time to appeal.  Plaintiffs

claim they need information regarding the Agency's policies related to collections and

hardship waivers and how those policies play out in practice.  Plaintiffs argue that

based on the Sixth Circuit opinion, they are allowed the information sought.

In its Opinion, the Sixth Circuit noted,

> [T]he settlement agreement does more than clarify existing policies—it
> unambiguously requires policy changes. In  paragraph 7,  the Agency
> 'agree[d] to . . . policies and practices,' including issuing 'a
> determination of restitution' and, upon the filing of a timely appeal,
> 'hold[ing] the adjudication of the restitution determination in abeyance
> until the appeal on the  underlying issue(s) . . . becomes final.'  We
> discern no obstacle to the district court determining whether the Agency
> systematically has ignored these conditions and, if it has, ordering the
> appropriate remedy.[fn1]   To the extent the parties dispute the
> underlying facts, the court may hold an evidentiary hearing.

*Frazier,* Case No. 14-1536, Opn at p. 4.

As to the information sought by Plaintiffs in topics 4, 7, 8, 10, 12, 13, 14

relating to general policies and procedures regarding the Agency's practices and

procedures and the names of staff who work in the collections or hardship waiver

units, Plaintiffs have not shown how this information establishes that the Agency

breached a specific provision in the Settlement Agreement, nor the identity of specific

staff is relevant.  As noted by the Sixth Circuit, the Settlement Agreement "changed"

the then-existing policies and procedures.  This means that the policies and procedures

at issue are the ones expressly written in the Settlement Agreement.  Any current policies and procedures are not relevant.  The issue is whether a specific policies and procedures written into the Settlement Agreement has been breached–not what the current policies and procedures are.

As to information regarding the disposition of hardship waivers requested in topics 5, 6, 11, this information is not relevant as to whether the Settlement Agreement was breached.

The amounts of all restitution collection by the Agency and collection methods as requested in topic 15 is also not relevant to show whether the Agency breached a specific provision of the Settlement Agreement.  The Settlement Agreement does not provide for an "overall" damages for any breach.  As noted by the Sixth Circuit in a footnote, Plaintiffs sought enforcement of the Settlement Agreement on the appeal.  The Sixth Circuit also noted that "the absence of express remedies in the settlement agreement does not foreclose the fashioning of appropriate remedies in the event of a breach.  Retained jurisdiction vests the court with inherent authority to enforce its orders by granting injunctive relief." *Frazier, id.* at pp. 3-4.

Regarding fraud reversal information sought in topic 16, such information also does not show that the Agency breached a specific provision of the Settlement Agreement.

### 3. Deposition Notice to Teresa Burns

Defendants seek limitations to the topics to be covered at the deposition of Teresa Burns, the Agency's State Division Administrator.  Plaintiffs respond that Burns signed the interrogatory responses and is not a Rule 30(b)(6) deposition and so Plaintiffs are not required to list deposition topics prior to the deposition.  Plaintiffs note that Defendants will have the opportunity to object on the record as to any questions.

Because Burns is not a Rule 30(b)(6) deposition, deposition topics are not required to be listed prior to the deposition.  Defendants may place any objections on the record at the deposition.

### B. Plaintiff UAW's Motion for Order to Show Cause and to Compel Discovery (ECF No. 89, filed 4/9/21)

#### 1. Underlying Data and Records of All Collection Activity While Timely Appeals are Pending

Plaintiffs claim that the Agency initiates collections activity prior to a hearing is contrary to the Settlement Agreement and to Michigan Employment Security Act ("MESA"), MCL 421.1 *et seq*.  Plaintiffs assert that the Court ordered Defendants to produce data on collection activities.  Yet, Plaintiffs argue that Defendants intentionally limited their search, affirmatively excluding any cases in which collection activity occurred pre-hearing.  Plaintiffs claim the language and intent of

14

the Agreement, the law, and Orders from this Court and the Sixth Circuit are clear: the Agency may not initiate collections activity until there has been a final decision on the merits.  Because of Defendants' failure to follow the Court's order, Plaintiffs request an Order to Show Cause why Defendants failed to follow the Order.

Plaintiffs also request that the Court compel Defendants to conduct a search for cases on which collection activity took place prior to a hearing and produce data related to any cases in which the Agency finds a possible or probable violation.

In response, Defendants are unclear as to when Plaintiffs made this specific discovery request.  They assume it was made as part of its pending 30(b)(6) deposition notice, but the demand fails to consider the very specific provisions of the Settlement Agreement–only after the first decision to institute restitution is made at the Referee level or above.  Defendants assert the parties and the Court are bound by the language of the Settlement Agreement.  Defendants argue that the Settlement Agreement only applies after the ALJ determines restitution is owed and that nothing in the Settlement Agreement provides anything about collection practices prior to an ALJ hearing.

As set forth in the Settlement Agreement as set forth above and again, here, Paragraph 7 first expressly provides, "[w]henever the *first decision that unemployment benefits have been improperly paid is made by a Referee, the Board of Review or a court*, the Defendant agrees to the following policies and practices ..."  The issue

15

before the Court is whether Defendants breached the Settlement Agreement and, if so, Plaintiffs seek enforcement of the Settlement Agreement.  The discovery provided by Plaintiffs conformed to the language of the Settlement Agreement–that information only after the ALJ or any higher authority, have found that benefits were improperly paid.  This matter is not before the Court as to whether the Agency violated any Michigan law–specifically under MESA.

### 2.      Coherent Data Regarding the Limited Scope of Production that the Agency has Provided

Plaintiffs claim that the data provided is largely indecipherable and does not reflect whether any identified violations were the result of systemic non-compliant policies.  Plaintiffs further claim that Defendants have acknowledged that the data provided is impossible to interpret and that a Rule 30(b)(6) deposition is necessary to understand the data produced.  Plaintiffs acknowledge that Defendants agreed to such a deposition, but Plaintiffs claim this is insufficient because Defendants have an obligation to produce readable data and the sources of the violations are critical in determining whether there are systemic violations, or if any violations are de minimis as Defendants argue.

Plaintiffs request that this Court compel Defendants produce a single spreadsheet with (1) an adequate key, including a key to explain any abbreviations

or color coding; (2) information regarding how the Agency discovered the identified alleged violation; (3) search terms used to discover the alleged violation; and (4) explanations in plain English to describe the alleged violation, including any protests or appeals and all collection activity.

Defendants respond that they agreed to complete a Rule 30(b)(6) deposition regarding how the spreadsheet was produced and how to interpret the data in the spreadsheet. Defendants claimed that Plaintiffs did not seek any additional information regarding the contents of the spreadsheet before Defendants sought an order show cause/or to compel it. Defendants assert Plaintiffs never sought a single spreadsheet. Defendants claimed it produced two additional spreadsheets on February 9 and 24, 2021 and advised Plaintiffs that the production would be rolling. Plaintiffs did not object to the multiple disclosures. Defendants assert any information regarding the contents of the spreadsheet should first be attempted to be resolved at the Rule 30(b)(6) deposition, which the parties have agreed to.

Before the Rule 30(b)(6) deposition, Plaintiffs must send a letter request to Defendants as to which abbreviations they seek definitions and then Plaintiffs will respond accordingly. As to how the spreadsheets were produced and any additional information regarding the contents of the spreadsheet can be addressed by the Rule 30(b)(6) witness. If Plaintiffs are not satisfied, they can place their objections on the

record and file a motion if necessary.

### 3.    Underlying Files

Plaintiffs assert that Defendants acknowledged that there were at least 156 "possible" violations and 67 "probable" violations of the Settlement Agreement based on the discovery provided.  Plaintiffs claim that it must review the underlying claimant files in order to meet its burden that there may be actual and/or systemic violations of the Settlement Agreement by the Agency.

Defendants respond that only after the Rule 30(b)(6) deposition is complete as to the data that was provided on these violations should the Court consider any production of claimant files.  The Court previously denied production of claimant files noting that only if production of the data in those files could not be produced, then claimant files may be required.

The parties should first hold the Rule 30(b)(6) depositions on the possible and probable violations data provided.  If Defendants thereafter believes the information is insufficient, Defendants may then file their objections on the record and file the appropriate and specific motion.

### 4.    Depositions of Agency Directors and Officials

Plaintiffs seek to depose the Agency Directors and Officials.  The Court has

ruled on the depositions of Olson, Moffett-Massey and Burns noted above.

     **5.**     **Information Regarding Claimants Whose Hardship Waivers are Automatically Denied Due to Pending Appeal While Collection Activity is Ongoing**

Plaintiffs claim that the right to request an indigency waiver "at any time" under the Settlement Agreement is illusory in practice. Plaintiffs assert that the Agency is engaging in collection activity against claimants while appeals are pending, yet automatically deny them financial hardship waivers because of the pending appeal. Plaintiffs further assert that Defendants repeatedly refused to produce any information regarding hardship waiver in practice and only produced the forms. Plaintiffs argue that in order to understand whether Defendants provide a meaningful right to seek hardship waivers, Plaintiffs need information regarding the policies under which Defendants automatically deny hardship waivers due to the stage of the case and other noncompliant policies and procedures. Plaintiffs seek that Defendants produce data regarding denied hardship waivers and reasons for such denial including applications for hardship waivers denied during a timely appeal, procedures regarding how often or in what manner each form was sent, to what category of claimant each form was sent, and whether Defendants actually provided a hardship waiver form upon request from a claimant.

Defendants respond that the Court has previously denied the Plaintiffs' request

to produce records regarding hardship waivers because the Court found that under the Settlement Agreement, the Agency was only required to produce Notices sent to claimants. Plaintiffs have produced the required Notices sent to the claimants.

The terms of the Settlement Agreement, as set forth above and here, expressly states that the Agency had to notify claimants of the availability of hardship waivers on "every notice regarding collection or recovery of a non-fraud overpayment." (Agreement, ¶7(e)) As this Court previously held, the Settlement Agreement only required Defendants to notify claimants of the availability of hardship waivers. Nothing in the Settlement Agreement provides that Plaintiffs are entitled to any further information, such as whether such requests are denied and the reasons for any denial.

### C. Plaintiff UAW's Motion for Reconsideration as to Steve Gray

Plaintiff seeks to depose Steve Gray in his official capacity as the Director of the Unemployment Insurance Agency arguing that the Court committed palpable error in its previous order denying the request.

The Local Rules of the Eastern District of Michigan provide that any motion for reconsideration of non-final orders must be filed within 14 days after entry of the order. E.D. Mich. LR 7.1(h)(2). No response to the motion and no oral argument thereon shall be allowed unless the Court orders otherwise. E.D. Mich. LR 7.1(h)(3).

Motions for reconsideration of non-final orders are disfavored and may be brought only upon the following grounds:

> (A)  The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;
>
> (B)  An intervening change in controlling law warrants a different outcome; or
>
> ©    New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. LR 7.2(h)(2).  A motion for reconsideration is not a vehicle to re-hash old arguments, or to proffer new arguments or evidence that the movant could have brought up earlier.  *Sault Ste. Marie Tribe v. Engler,* 146 F.3d 367, 374 (6th Cir. 1998)(motions under Fed.R.Civ.P. 59(e) "are aimed at *re* consideration, not initial consideration")(citing *FDIC v. World Universal Inc.,* 978 F.2d 10, 16 (1st Cir.1992)).

The Court indicated that if Gray is able to assert he has not gained relevant information to the two issues before the Court as the Director since June 3, 2019, he not be deposed.  (ECF No. 78, PageID.1304) There has been no indication that Gray has so asserted and Plaintiff's motion has not so indicated.  To move this forward, the Court will allow Gray to either be deposed in his official capacity or respond to an interrogatory to such a question, to determine whether he has relevant information since he became the Director on June 3, 2019 as to the two issues before the Court.

21

As noted by Plaintiff, Gray will not divulge any attorney-client information if deposed or in any response to an interrogatory.  The Court grants Plaintiff's Motion for Reconsideration as noted above.

## III.   CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion to Deny and/or Limit Plaintiffs' February 26, 2021 Notices of Deposition **(ECF No. 84, filed 3/12/21)** is **GRANTED as to Acting Director Olsen and Former Director Moffett-Massey; GRANTED IN PART AND DENIED IN PART as to the Rule 30(b)(6) Depositions; and DENIED as to Teresa Burns.**

IT IS FURTHER ORDERED that Plaintiff UAW's Motion for Order to Show Cause and to Compel Discovery **(ECF No. 89, filed 4/9/21) is DENIED as to the Order to Show Cause; DENIED as to Agency Acting and Former Directors; DENIED without prejudice subject to Rule 30(b)(6) depositions; and DENIED as to hardship waiver files.**

IT IS FURTHER ORDERED that Plaintiff UAW's Motion for Reconsideration **(ECF No. 79, filed 6/15/20)** is **GRANTED** as set forth above.

IT IS FURTHER ORDERED that the Motion to Enforce Settlement Agreement and for Permanent Injunction **(ECF No. 9, filed 8/20/13)** is **STAYED** and to be

22

REOPENED upon completion of discovery and further briefing.

IT IS FURTHER ORDERED that the parties submit a joint status report of the discovery issues with proposed dates governing this matter, within thirty (30) days from the date of this Order.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED: September 29, 2023